1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   -----------------------------x
                                        24-CR-492(NRM)
 3   UNITED STATES OF AMERICA,
                                        United States Courthouse
 4                                      Brooklyn, New York

 5          -versus-                    August 19, 2025
                                        2:30 p.m.
 6   DEWITT JOHN,

 7          Defendant.

 8   -----------------------------x

 9         TRANSCRIPT OF CRIMINAL CAUSE FOR FARETTA HEARING
              BEFORE THE HONORABLE NINA R. MORRISON
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  BROOKE THEODORA, ESQ.
                              Assistant United States Attorney
15
     For the Defendant:       FEDERAL DEFENDERS OF NEW YORK
16                            BY:  JULIAN HARRIS-CALVIN, ESQ.

17
     Also Present:            JESSICA HERNANDEZ, Investigator
18                            JAMES BRANDEN, ESQ., Stand-by counsel

19

20   Court Reporter:         Rivka Teich, CSR, RPR, RMR, FCRR
                              Phone:  718-613-2268
21                            Email:  RivkaTeich@gmail.com

22   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
23

24

25
```

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.  Criminal cause for

3      a Faretta hearing, United States vs. John.

4              Counsel state your name, starting with the

5      Government.

6              MS. THEODORA:  Good afternoon.  Brooke Theodora for

7      the Government.

8              MS. HARRIS-CALVIN:  Julian Harris Calvin and Jessica

9      Hernandez, Federal Defenders of New York on behalf of Mr. John

10     who is present.  Also we have at counsel table attorney Jim

11     Branden, who I think the Court invited to join as well.

12             MS. HERNANDEZ:  Good afternoon.

13             THE COURT:  Good afternoon, Mr. Branden.

14             Good afternoon, Mr. John.  Can you hear me okay?

15     Okay.

16             So Mr. John, we're here today for a hearing, what is

17     called a Faretta hearing, from a case called Faretta versus

18     California, because you indicated at the last status

19     conference that you wanted to discharge your lawyer and

20     proceed pro se or represent yourself at trial.  I know it's

21     been a bit of time since I saw you last.  Is that something at

22     this time you would think you would like to do?

23             THE DEFENDANT:  Move forward.

24             THE COURT:  Let me explain how we're going to

25     proceed today.  Your lawyer, Ms. Harris, is still here from

1    the Federal Defenders as well as the prosecutor.  I've also

2    invited Mr. James Branden, who is an experienced lawyer from

3    the criminal justice system panel to be here as well.  And let

4    me just tell you a little bit about what is going to happen

5    today.

6            As you know, in an Indictment was returned in

7    December, Mr. John.  You were charged with one count of sexual

8    exploitation of a child.  The Sixth Amendment to the U.S.

9    Constitution includes a right to self-representation if a

10   defendant charged with a crime makes a knowing and voluntary

11   decision to do so.  In order for me make that determination I

12   have to conduct what is called a Faretta hearing.  And the

13   decision to represent yourself at trial in a criminal case is

14   a very serious one, so I have to be sure that you make it

15   understanding the consequences, the hazards, and the potential

16   disadvantages associated with such a decision.

17           So before I grant your request to waive your Sixth

18   Amendment right to counsel and proceed pro se, with what is

19   called standby counsel, which means a lawyer is there to

20   advise you and answer questions but not to stand up for you or

21   represent you at trial, there are a number of questions that I

22   have to ask you to determine whether you're making that

23   decision knowingly and voluntarily.  So the first thing I'm

24   going to do is explain the law to you.  Then I'm going to go

25   through a series of questions for you.  All right?

1          THE DEFENDANT:  Okay.

2          THE COURT:  First I'm going to review the law and

3    then talk to you about the risks.  And the reason I do the

4    last part is that even if I find that you could decide to

5    proceed without a lawyer, I want to make sure given the very

6    serious charge that you face, that you have all the

7    information you need to decide if you should go that route.

8    Okay.  So let me first tell you about the law that I have to

9    follow for today's hearing.

10         The Second Circuit has instructed judges that in

11   order to determine if a person's waiver of their right to

12   counsel is knowing and voluntary the Court should, first,

13   engage the defendant in an on-the-record discussion to ensure

14   that he or she fully understands the ramifications of the

15   decision.  Second, consider whether the defendant understands

16   that he has a choice between proceeding pro se and with

17   assigned counsel.  Third, consider whether the defendant

18   understands the advantages of having someone trained in the

19   law to represent him.  Fourth, consider whether the defendant

20   has the capacity to make an intelligent choice.  Fifth, inform

21   the defendant of dangers and disadvantages of

22   self-representation.  And six, inform the defendant that he

23   would be required to follow all the ground rules of trial

24   procedure.  That all, Mr. John, comes from Torres versus

25   United States decided by the Second Circuit in 1998.  So

1    that's what I'm planning to do today.

2              Before we get started, let me tell you one other

3    important thing.  Even if I find that you have the right to

4    proceed without Ms. Harris and the Federal Defenders as your

5    lawyer, you're under no obligation to make a decision today

6    about whether you want to do that.  We can come back in a few

7    days or next week or next month if you want to take more time

8    to think about it, or if you want to discuss it with your

9    brother or family members or other people that you trust.

10   That doesn't mean -- I know you're eager to move forward, it

11   doesn't delay the proceedings whether I decide to exclude time

12   or have you allow you to exercise your right to a speedy trial

13   or schedule a trial soon, it's not the same thing as whether

14   you proceed with a lawyer or not.  Do you understand that?

15             THE DEFENDANT:  Understood.

16             THE COURT:  Okay.  So I asked Mr. Branden to be here

17   today because if you're in a position, for whatever reason you

18   don't think you can or should continue to have Ms. Harris

19   represent you, I do have you the option of relieving her and

20   appointing Mr. Branden as your lawyer instead.  And again,

21   because you qualify for court-appointed counsel, that would be

22   at no charge to you.  So it doesn't have to be a choice

23   between having Ms. Harris as your lawyer and having no lawyer

24   at all.  There is a third option, which is to have Mr. Branden

25   to be your lawyer for trial and all the pretrial motions you

FARETTA HEARING                            6

1   wish to file.  All right?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. John, I'm going to ask you a number

4   of questions that relate to the issues I have to consider

5   today.  If you don't understand my questions just say so and

6   I'll reword my questions.  I need you to answer the questions

7   under oath.  I'll have you sworn.

8              (Defendant sworn.)

9              THE COURTROOM DEPUTY:  State your name.

10             THE DEFENDANT:  Dewitt John.

11             THE COURT:  Have a seat.  Mr. John, you're now under

12  oath.  If you answer any of my questions falsely, your answers

13  could later be used against you in another prosecution for

14  perjury or making a false statement.

15             Mr. John, what is your full name?

16             THE DEFENDANT:  Dewitt Keenan John.

17             THE COURT:  How old are you?

18             THE DEFENDANT:  Thirty-one.

19             THE COURT:  How much education have you had?

20             THE DEFENDANT:  Bachelors degree.

21             THE COURT:  Where did you get your Bachelors?

22             THE DEFENDANT:  Baruch College, CUNY University.

23             THE COURT:  What area was your degree?

24             THE DEFENDANT:  Computer information science.

25             THE COURT:  When did you get that degree?

FARETTA HEARING                    7

1          THE DEFENDANT:  2019.

2          THE COURT:  Are you able to speak and understand

3     English?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you ever been treated by a

6     psychiatrist or a psychologist or a therapist for any reason?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Can you tell me about that history, was

9     it in the hospital, was it in a therapist's office, what was

10    the history of treatment?

11         THE DEFENDANT:  Hospitalization.

12         THE COURT:  When were you hospitalized?

13         THE DEFENDANT:  2024.

14         THE COURT:  Tell me about the circumstances of that.

15         THE DEFENDANT:  Attempted suicide.

16         THE COURT:  When in 2024 was that?

17         THE DEFENDANT:  August, July, August.

18         THE COURT:  What was the hospital where you were

19    taken?

20         THE DEFENDANT:  Can't recall -- Elmhurst.

21         THE COURT:  Was that the only hospital where you

22    were, or you were taken to Elmhurst then transferred?

23         THE DEFENDANT:  Only hospital.

24         THE COURT:  How long approximately were you there

25    for?

FARETTA HEARING                               8

1          THE DEFENDANT:  Six to eight weeks.

2          THE COURT:  I have to ask these questions so I

3   understand your history because the law requires me to make

4   these inquiries.  I don't mean to intrude into your privacy

5   see or difficult part of your life.  What can you tell me

6   about the suicide?

7          THE DEFENDANT:  Nothing to disclose.

8          THE COURT:  Okay.  I'm going to have to ask you more

9   directly.  Did anyone assist you in attempting to take your

10  life?

11         THE DEFENDANT:  No.

12         THE COURT:  Did somebody find you and call 911?  How

13  was it that you got to the hospital?

14         THE DEFENDANT:  I was found.

15         THE COURT:  What, if any, diagnosis did you receive

16  when you were at the hospital, if you know?

17         THE DEFENDANT:  Can't say.

18         THE COURT:  Okay.  Do you know if you were diagnosed

19  with depression?

20         THE DEFENDANT:  Not full diagnosis.

21         THE COURT:  After you were discharged from the

22  hospital, did you receive any additional mental health

23  treatment?

24         THE DEFENDANT:  No.

25         THE COURT:  So by mental health treatment let me

FARETTA HEARING 9

1    just say that would mean even follow-up appointments with a

2    doctor or a psychiatrist or anyone like that.

3              THE DEFENDANT:  There was an intense out-patient

4    program, but I never attended.

5              THE COURT:  Did you go to any of the meetings at

6    all?

7              THE DEFENDANT:  No.

8              THE COURT:  And since you've been at MDC, have you

9    been seen by a psychiatrist for any reason or mental health

10   professional?

11             THE DEFENDANT:  Not necessarily, other than intake.

12             THE COURT:  When you say intake, you met with

13   somebody and discussed your history when you got there?

14             THE DEFENDANT:  Yes.

15             THE COURT:  When you say not necessarily, do you

16   remember if at any point after that you had seen a

17   psychiatrist or a mental health professional or anybody in the

18   mental health department there?

19             THE DEFENDANT:  No point after that.

20             THE COURT:  Let me go back a little before that.

21   When you were a child or young person did you ever, before the

22   age of 18, did you ever receive any mental health care at all?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Tell me about that when you were between

25   the ages of being born and 18, what type of mental health care

FARETTA HEARING                    10

1    did you receive?

2              THE DEFENDANT:  Similar.

3              THE COURT:  When you say similar, what do you mean?

4              THE DEFENDANT:  Therapist on a regular bases.

5              THE COURT:  Starting about what age?

6              THE DEFENDANT:  I can't recall.

7              THE COURT:  Do you remember even approximately how

8    old you were?

9              THE DEFENDANT:  Teen, I think area.

10             THE COURT:  Do you remember what prompted it, what

11   it was that led you to go to the therapist office?

12             THE DEFENDANT:  Suicide attempt.

13             THE COURT:  How old were you about when you made the

14   first attempt, do you recall?

15             THE DEFENDANT:  Can't recall.

16             THE COURT:  Do you recall the attempt at all, or do

17   you just remember being told that you made it?

18             THE DEFENDANT:  I recall.

19             THE COURT:  How many attempts before you were 18 did

20   you make?

21             THE DEFENDANT:  One.

22             THE COURT:  And after that attempt when you were a

23   teenager, were you hospitalized?

24             THE DEFENDANT:  Other than last year, no.

25             THE COURT:  To the best of your recollection, before

1   the age of 18 when you had that attempt when you were a

2   teenager, did anybody take you to the hospital after you were

3   found?

4                THE DEFENDANT:  Yes, the school.

5                THE COURT:  The school, okay.  Do you remember how

6   long you stayed in the hospital?

7                THE DEFENDANT:  No.

8                THE COURT:  Was it more than a few days?

9                THE DEFENDANT:  Yes.

10               THE COURT:  Was it more than a month?

11               THE DEFENDANT:  Can't recall.

12               THE COURT:  Do you remember whether you got a

13  diagnosis then at any point?

14               THE DEFENDANT:  I don't recall.

15               THE COURT:  Okay.  And then did you graduate from

16  high school at age 18 or somewhat later than that?

17               THE DEFENDANT:  Eighteen.

18               THE COURT:  Did you go to straight to college or

19  were you out working?

20               THE DEFENDANT:  Straight to college.

21               THE COURT:  And tell me again how old are you now?

22               THE DEFENDANT:  Thirty-one.

23               THE COURT:  Did you graduate at 22 or did you it

24  take you more than four years?

25               MS. HARRIS-CALVIN:  Your Honor, you missed it, he

FARETTA HEARING                    12

1   said he's actually 32.

2           THE COURT:  Okay, my apologies.  So after you

3   graduated, when you were in college did you psychiatrist or

4   mental health professional for any reason?

5           THE DEFENDANT:  No.

6           THE COURT:  Did you have any further suicide

7   attempts in college?

8           THE DEFENDANT:  No.

9           THE COURT:  How about between the time that you were

10  22 and the time you were hospitalized in 2024, were there any

11  other hospitalizations for any reason?

12          THE DEFENDANT:  No.

13          THE COURT:  Did you see a psychiatrist or doctor for

14  any mental health concerns, depression, anxiety, anything else

15  between the time you graduated from high school and when you

16  made that suicide attempt last year?

17          THE DEFENDANT:  No.

18          THE COURT:  How about, had you previously been

19  incarcerated?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Tell me about your history of

22  incarceration before you were remanded in this case.  Just the

23  approximate time period.

24          MS. HARRIS-CALVIN:  Can I have a second?

25          (Discussion was had off the record.)

1          THE COURT:  Mr. John, tell me about the prior

2  periods before you are remanded back a few months ago in which

3  you were incarcerated, when they were, and where were you

4  held, if you recall.

5          THE DEFENDANT:  In 2014.

6          THE COURT:  Where were you held in that case?

7          THE DEFENDANT:  In Sweden.

8          THE COURT:  That was, if I recall correctly, about a

9  year that you were incarcerated in that case?

10          THE DEFENDANT:  Eight months.

11          THE COURT:  At any point during that period of

12  incarceration did you see a mental health professional or a

13  therapist or psychiatrist in the prison or jail?

14          THE DEFENDANT:  No.

15          THE COURT:  When you were being charged with the

16  crime in that case, did your lawyer ever send you for a mental

17  health evaluation by an outside expert or a doctor, anyone at

18  all?

19          THE DEFENDANT:  Yes, I was with mental health

20  evaluation for about three to four weeks.

21          THE COURT:  This was before you got convicted in the

22  case in Sweden while the charges were pending?

23          THE DEFENDANT:  Yes.

24          THE COURT:  When you say three to four weeks, were

25  you in a custodial setting or a hospital?

FARETTA HEARING                    14

1          THE DEFENDANT:  Custodial, that only deals with

2    psych patients.

3          THE COURT:  That was a facility in Sweden?

4          THE DEFENDANT:  Correct.

5          THE COURT:  It was a psychiatric hospital or

6    facility of some kind connected with the justice system?

7          THE DEFENDANT:  Correct.

8          THE COURT:  Do you remember, I know it's been

9    sometime, whether there was a finding made at that point about

10   whether you were competent to proceed to trial?

11         THE DEFENDANT:  Yes.

12         THE COURT:  What was that finding?

13         THE DEFENDANT:  It was.

14         THE COURT:  That you were competent?

15         THE DEFENDANT:  Correct.

16         THE COURT:  Do you recall if before the finding was

17   made you were competent there was an earlier finding that you

18   weren't yet competent?  There is sometimes, I don't know if

19   you're familiar with the term, restored to competency.  I

20   don't know how to handle it in Sweden.  But sometimes a person

21   might be suffering from a condition and then be given some

22   medication that helps them and then they can be deemed

23   competent to proceed.  Do you know if at any point you were

24   initially found not competent to proceed?

25         THE DEFENDANT:  It was considered a possibility but

FARETTA HEARING                                15

1    the evaluation ruled that out.

2            THE COURT:  I apologize if I asked you this already.

3    Sitting here today, do you remember if you got a diagnosis of

4    any kind during the three to four weeks you were in that

5    psychiatric facility in Sweden?

6            THE DEFENDANT:  No.

7            THE COURT:  At any other point other than the things

8    we've just covered, do you recall seeing a therapist or being

9    evaluated by psychiatric or other mental health professional?

10           THE DEFENDANT:  Not that I recall.

11           THE COURT:  Do you recall at any point since you

12   were a child any specific psychiatrist diagnosis or

13   psychological diagnosis that you may have received?

14           THE DEFENDANT:  I don't recall.

15           THE COURT:  And let me ask a few specific questions

16   to see if it prompts your memory at all.  These are just some

17   the diagnoses that people may receive in those settings.  Have

18   you ever to your recollection been diagnosed with

19   schizophrenia or schizoaffective disorder?

20           THE DEFENDANT:  No.

21           THE COURT:  Bipolar disorder or sometimes it's call

22   manic depression that you recall?

23           THE DEFENDANT:  No.

24           THE COURT:  Do you recall if you ever been diagnosed

25   with depression?

FARETTA HEARING                    16

1          THE DEFENDANT:  (Nodding.)

2          THE COURT:  You have to say yes or no.

3          THE DEFENDANT:  I think so, but I'm not sure if they

4   went through it again.

5          THE COURT:  Say it again?

6          THE DEFENDANT:  I believe so.

7          THE COURT:  Do you recall about when you might have

8   been diagnosed with depression?

9          THE DEFENDANT:  No.

10         THE COURT:  Have you ever been diagnosed with what

11  is called post traumatic stress disorder, PTSD?

12         THE DEFENDANT:  No.

13         THE COURT:  How about medication?  Have you ever

14  been given any medication at any point in your life for

15  treatment of depression or any other mental health symptom?

16         THE DEFENDANT:  (Inaudible)

17         THE COURT:  Speak a little more slowly and loudly.

18  I think you said you've only taken it once and you refused

19  every other time?

20         THE DEFENDANT:  Correct.

21         THE COURT:  What was the one time and what did you

22  take?

23         THE DEFENDANT:  Anti-depressant, I don't recall the

24  time.

25         THE COURT:  When was that that you took it the one

FARETTA HEARING                    17

1    time?

2              THE DEFENDANT:  During the initial hospitalization.

3              THE COURT:  When you say initial, was that when were

4    a teenager or adult?

5              THE DEFENDANT:  Teenager.

6              THE COURT:  Okay.  So at no point in your adult life

7    have you ever taken any medication for depression that you

8    recall.

9              THE DEFENDANT:  No.

10             THE COURT:  But it sounds like, if I understand you

11   correctly, it's been recommended or prescribed to you, but

12   you've declined to take it.

13             THE DEFENDANT:  That's correct.

14             THE COURT:  Do you recall at any point having been

15   forcibly medicated even though you didn't consent because they

16   thought it was in your best interest?

17             THE DEFENDANT:  No.

18             THE COURT:  Okay.  Let me ask you a little about

19   your history of substance use.  Have you ever in your adult

20   life -- let's go to childhood.  Before 18, did you ever try or

21   consume any alcohol?

22             THE DEFENDANT:  Try, yes; consume on a regular

23   basis, no.

24             THE COURT:  You tried before you turned 18?

25             THE DEFENDANT:  Yes.

FARETTA HEARING                    18

1          THE COURT:  Do you recall how often you --

2          THE DEFENDANT:  Once.

3          THE COURT:  How about drugs?  So everything from

4   cannabis to other drugs, did you ever try any of those before

5   you were 18 years old?

6          THE COURTROOM DEPUTY:  No drugs.

7          THE COURT:  And as an adult, have you consumed

8   alcohol?

9          THE DEFENDANT:  Not really, no.

10         THE COURT:  Not really, okay.  Has anyone ever

11  diagnosed or told that you they thought you had a problem with

12  alcohol?

13         THE DEFENDANT:  No.

14         THE COURT:  How about drugs, have you ever as an

15  adult consumed marijuana or cannabis?

16         THE DEFENDANT:  No.

17         THE COURT:  How about any other drugs?

18         THE DEFENDANT:  No substance whatsoever.

19         THE COURT:  I just have to ask this.  Have you ever

20  been recommended for treatment for drug addiction or drug use

21  or ordered to perform or attend drug treatment?

22         THE DEFENDANT:  No.

23         THE COURT:  Have you ever been ordered by a court to

24  attend mental health treatment; that is, directed as a

25  condition of probation or supervised release or anything else?

FARETTA HEARING                    19

1            THE DEFENDANT:  No.

2            THE COURT:  Okay.  Are you currently taking any

3    medication or prescribed any medication for anything, not just

4    mental health, even physical things.

5            THE DEFENDANT:  No.

6            THE COURT:  Let me ask you about your care by a

7    doctor.  When was the last time you saw a doctor, even for a

8    physical?

9            THE DEFENDANT:  2024, last year.

10           THE COURT:  So 2024, was that when you were in the

11   hospital after the suicide attempt?

12           THE DEFENDANT:  Correct.

13           THE COURT:  Let me ask you, I know it's something

14   you don't want to discuss but I have to ask.  Did you sustain

15   any physical injuries as a result of the suicide attempt?

16           THE DEFENDANT:  No.

17           THE COURT:  Do you have any lingering pain or

18   symptoms at all as a result of that attempt?

19           THE DEFENDANT:  No.

20           THE COURT:  Do you have any other health conditions

21   that you're dealing with on an on-going basis, even though

22   they may be well-managed?  For example, diabetes, sickle cell,

23   asthma, anything of that nature?

24           THE DEFENDANT:  No.

25           THE COURT:  Are you in any physical pain today?

FARETTA HEARING                    20

1                 THE DEFENDANT:  No.

2                 THE COURT:  How are you sleeping these days?

3                 THE DEFENDANT:  Average.

4                 THE COURT:  Average, okay.  When you say average,

5       about how many hours per night?

6                 THE DEFENDANT:  Seven or eight.

7                 THE COURT:  Is your mind clear today?

8                 THE DEFENDANT:  Yes.

9                 THE COURT:  Mr. John, tell me in your own words now

10      that we've gone through that history what you understand the

11      nature of these criminal proceedings to be, that is, what is

12      the criminal charge that you're facing, and why are you here

13      in court?

14                 THE DEFENDANT:  You mean --

15                 THE COURT:  What they are accusing you of.  I'm not

16      asking you to say whether you did or didn't do the things you

17      are accused of, but what is your understanding of why you're

18      here in court.

19                 THE DEFENDANT:  Sexual exploitation of a minor.

20                 THE COURT:  What specifically do you understand that

21      the Government is accusing you having done.

22                 THE DEFENDANT:  Coercing minors to --

23                 THE COURT:  Say that again?

24                 THE DEFENDANT:  Coercing or exploiting minors in a

25      sexual manner.

FARETTA HEARING                           21

1          THE COURT:  Have you read the Indictment in this

2     case that was handed down against you?

3          THE DEFENDANT:  Yes.

4          THE COURT:  If you're going to represent yourself,

5     then there would be a trial in which there would be very

6     specific of factual allegations, things that they say that you

7     did.  So this is not your case, but in a bank robbery case the

8     Government would have to prove, for example, that the person

9     they are charging entered the bank to rob it and did certain

10    things on a specific date and location and the like.  What is

11    your understanding, even in general terms, what the Government

12    is accusing you of having done that they say makes you guilty

13    of sexual exploitation of a child.

14         THE DEFENDANT:  Getting them to do, I don't know,

15    illicit create videos and pictures of the sort.

16         THE COURT:  What is your understanding of the way

17    that the Government is saying you did that; that is, what

18    means they are saying you used when it took place, anything of

19    that nature, even if you don't know the exact dates, tell me

20    what your understanding is of what they are accusing you of

21    having done.

22         THE DEFENDANT:  Offering money for sexual favors, I

23    guess.

24         THE COURT:  And what do you understand the

25    Government is saying the means of how you did that, where it

FARETTA HEARING                    22

1    took place, and when, and what the means were that you used.

2           THE DEFENDANT:  Via the Internet, when it took place

3    2020 -- 2024.

4           THE COURT:  So Mr. John, let me hear from you more

5    directly about your concerns and what led you to make this

6    motion.  Just tell me in your own words why it is that you

7    think it's in your best interest to proceed without a lawyer

8    or at least without Ms. Harris as your lawyer at this time.

9           THE DEFENDANT:  The Government likes to stack things

10   in their favor.  I believe I can stack it in my favor if I do

11   it by myself.

12          THE COURT:  Tell me more what the Government likes

13   to stack things in their favor and you think that you could

14   stack it more in your favor if you do it yourself.  How

15   exactly, without giving away any legal strategies, do you

16   think that you would be able to affectively represent

17   yourself.  And why is it that you don't think that you could

18   do that while still having a lawyer represent you?

19          THE DEFENDANT:  Not certain.  Can't say.

20          THE COURT:  Okay.  Mr. John, have you thought about

21   the possibility that I raised a little bit earlier about

22   having a different lawyer represent you might relieve some of

23   your concerns whether you wish to speak to Mr. Branden or

24   consider having a different lawyer represent you?  For

25   example, I don't want you to get into strategy discussions you

1   had with Ms. Harris-Calvin, but if you had a difference of

2   opinion about motions you wish she would file or a strategy

3   you wished she would pursue or as you say she would stack

4   things in your favor, have you thought about whether it might

5   be worth talking to a different lawyer to see if that would

6   relieve your concerns.

7          THE DEFENDANT:  No.  Realistically, I prefer no

8   counsel at all.

9          THE COURT:  Would you be interested in taking a

10  short break so you could speak with Mr. Branden privately back

11  in the holding area or even if the courtroom without me

12  present to see if that would relieve your concerns?

13         THE DEFENDANT:  It's not necessary.

14         THE COURT:  Okay.  Anything else that you want to

15  say, Mr. John, about the reasons why you wish to proceed on

16  your own?

17         THE DEFENDANT:  No.

18         THE COURT:  Okay.  Mr. John, the right guaranteed by

19  the Sixth Amendment is your right and not your lawyer's right.

20  But I do need to ask your current lawyer questions about what

21  brought us here today so I can assess whether you're able to

22  make the decision to proceed without a lawyer.  I'm going to

23  do my best to ask these questions in a way that doesn't

24  violate the attorney/client privilege, that is anything you

25  discussed or any of Ms. Harris-Calvin's work product.  I'll

FARETTA HEARING                    24

1    let her let me know that if she thinks if any of the questions

2    are ones that she can't answer or if she prefer that I

3    rephrase them or limit the questions in any way.

4            So Ms. Harris-Calvin, what is your understanding of

5    why Mr. John wishes to proceed without you as his counsel at

6    this time?  What, if anything, would you like to say on the

7    issue generally?

8            MS. HARRIS-CALVIN:  I would say that, I discussed

9    his decision with him several times.  I would think this

10   charge carries a lot of time, a lot of mandatory time.  The

11   Government has talked about potentially indicting additional

12   counts, adding additional time.  And Mr. John, as someone who

13   has to suffer the consequences of whatever happens in this

14   courtroom and whatever this Court decides, if he were to be

15   convicted or through the trial process, he feels like he

16   would -- the way he and I have talked about it -- he feels

17   like he would feel more comfortable suffering the consequences

18   of his own decisions and himself being in control in a way

19   that he doesn't feel he can be in control when there is a

20   lawyer appointed, and that lawyer is the one who gets to make

21   some strategic decisions, who gets to have the conversations

22   with the Government.  And though he -- obviously, I defer to

23   him on a lot of those decisions as his lawyer, he wants to be

24   in the driver's seat in a way that traditionally defendants

25   don't get to completely be in when they are represented by

FARETTA HEARING                    25

1    counsel.

2              THE COURT:  Okay.  Let me ask you about some the

3    psychiatric history that I just discussed with Mr. John.  I

4    don't know where you are in your investigation or preparation

5    of the mitigation packet, but is there any additional

6    information about his psychiatric history either that he was

7    unable to recall that you wish to elaborate on or explain that

8    I should be aware of in deciding the question of competency?

9              MS. HARRIS-CALVIN:  I would definitely say that our

10   social worker team at the Federal Defenders did pull quite a

11   few of his records, including his most recent psychiatric

12   hospitalization and sort through that.  Ms. Hernandez and I

13   have spoken in-person with family members in New York and in

14   Saint Vincent and talked a lot of what they observed during

15   those suicide attempts.  His mental health, from their

16   obviously lay, but familiar perspective over the course of his

17   growing up and even recently.  And there is no indication from

18   our perspective as professionals in the office or an attorney

19   that he is incompetent in the legal sense.  So we certainly

20   have not found any evidence of that.

21             THE COURT:  Are you aware of any hospitalizations or

22   suicide attempts outside the two or three that we discussed.

23   Mr. John indicated he had a suicide attempt as a teenager then

24   another one in 2024.  In between that, there was a three- to

25   four-week hospitalization and evaluation in Sweden prior to

1    the criminal proceeding in that case.  So let me ask you,

2    first, are you aware of any additional suicide attempts beyond

3    the two that Mr. John described for me today?

4            MS. HARRIS-CALVIN:  There are the two that he

5    described.  His parents noted to us an additional incident

6    where they are not quite sure whether he committed suicide or

7    was acting out.  But they noted that in elementary school the

8    school called them afraid that he was harming or going to harm

9    himself.  Then he was referred to a mental health treatment

10   that he did complete, as an elementary school student.

11           THE COURT:  Based on your review of the records,

12   what diagnosis or diagnoses has he received to date?

13           MS. HARRIS-CALVIN:  He certainly was diagnosed with

14   depression, which is why he was prescribed the

15   anti-depressant.  I believe he was also diagnosed with some

16   form of anxiety.  But to my recollection and having read

17   through the notes that of our social worker, who

18   unfortunately, or fortunately is on parental leave, and is not

19   here to attend, those were the diagnoses that I read through

20   her notes.

21           THE COURT:  Have you personally had a chance to

22   review the psychiatric records from his most recent

23   hospitalization from 2024?

24           MS. HARRIS-CALVIN:  I did when I received them.  But

25   she really combed them through as the professional in our

FARETTA HEARING                    27

1    office and provided notes for us, which I'm happy, if the

2    Court would like me, to type up a summary of what is in there.

3    I'm happy to provide that.

4            THE COURT:  I'm not sure.  Let's talk about how I

5    want to proceed after that.

6            Tell me what your understanding is based on your

7    review of the records of course of care is recommended after

8    the last suicide attempt.  Mr. John indicated he was

9    recommended or advised or instructed to go to an intensive

10   out-patient program but didn't go; prescribed medication, but

11   didn't take it.  What is your understanding of what the course

12   of treatment was supposed to be?

13           MS. HARRIS-CALVIN:  I think that's as much as I

14   know.  As well he was directed to go a longer term out-patient

15   intensive treatment.  I think he did go to once or twice and

16   stopped going.  There was no follow-up care.

17           THE COURT:  Have you received a review of records

18   from Sweden from the three to four weeks in the psychiatric

19   facility there?

20           MS. HARRIS-CALVIN:  We received the entire record

21   are from his Swedish lawyer -- may I have a second to speak to

22   the investigator?

23           THE COURT:  Yes.

24           MS. HARRIS-CALVIN:  Thank you.  We did receive many

25   of the records from his case in Sweden from the Swedish

FARETTA HEARING                    28

1    lawyer.  They were in Swedish, so we translated some of them

2    and looked at some of them.  I believe we did look at some of

3    the records from that that references his psych evaluation.

4    And in those, again I'd have to, if the Court would like a

5    more specific outline of what we did see, but there weren't

6    any additional diagnoses that I can recollect other than him

7    being someone with a depression and anxiety.

8               THE COURT:  Ms. Hernandez, do you have any

9    recollection of having reviewed the translation of the

10   records, what the diagnoses were or anything else?

11              MS. HERNANDEZ:  I don't remember the exact diagnosis

12   but I know there is an evaluation that was conducted there.

13              THE COURT:  Do either of you know if he received any

14   mental health care while in custody in Sweden on those charges

15   for about eight months, or however long he was there?  Did you

16   get the prison records from the Swedish authorities?

17              MS. HERNANDEZ:  I don't recall reading about mental

18   health treatment.  I just know that I think he saw someone who

19   was evaluating him once or twice, but I don't know if that was

20   part of the treatment.

21              MS. HARRIS-CALVIN:  I don't remember seeing him

22   having actual long-term treatment during his incarceration in

23   Sweden.  We probably have to look at more at the records and

24   probably translate more records.

25              THE COURT:  How about the period between when he was

FARETTA HEARING                    29

1    released from custody around 2014/2015 in Sweden and then the

2    most recent suicide attempt in 2024.  From that decade, are

3    you aware of any mental health treatment, at all, anything of

4    that nature?

5           MS. HARRIS-CALVIN:  We're not aware of that.  And

6    when we spoke to the family members, they didn't note any

7    additional treatment.

8           THE COURT:  Okay.  Anything else, Ms. Harris, that

9    you wish to add about your perspective on whether or not you

10   think it's in his best interest, Mr. John is competent to

11   knowingly and voluntarily waive his right to counsel at this

12   time?

13          MS. HARRIS-CALVIN:  I would say in terms of

14   competence in the legal sense --

15          THE COURT:  I recognize your not a mental health

16   professional, but for waiver purposes.

17          MS. HARRIS-CALVIN:  He's very competent, I would say

18   from what I have seen and from my team's interactions with him

19   over the course last several months since November when we met

20   him.  I would say, just if the Court will allow, he does have

21   an affect that I think the Court might be picking up on.  But

22   it's not one that we see as being something that speaks to his

23   competence or his intellect or anything like that.  I do think

24   he's making a knowing and voluntary choice.  I think that's

25   all I'll say about that.

FARETTA HEARING                                    30

1          THE COURT:  Mr. John, let me now talk with you in

2   some detail about the potential penalties that you face if you

3   go to trial or engage in plea negotiates with the Government

4   and are convicted on this charge.  Or potentially if the

5   Government supersedes, I know there was a subsequent search

6   warrant and additional evidence seized from your residence

7   after the original Indictment was handed down, so there could

8   be a Superseding Indictment.  I don't know what those charges

9   might be or could be, I can only advise you about the

10  penalties for the count that you're facing now.  I want to

11  make sure you understand the very serious yours potential

12  consequences if you go to trial and are found guilty of this

13  offense.  Have you heard of the term mandatory minimum

14  sentence before?

15          THE DEFENDANT:  Yes.

16          THE COURT:  What is your understanding of what that

17  is?

18          THE DEFENDANT:  Minimum time that you're required to

19  do.

20          THE COURT:  So in this case there are some possible

21  mandatory minimum sentences that would apply if you're

22  convicted of the crime that the Government has charged you

23  with.  If you're found guilty of sexual exploitation of, Count

24  One in Indictment, the Court must sentence you to a term of

25  imprisonment of not less than 15 years up to a term of 30

1    years.  Do you understand that?

2              THE DEFENDANT:  Understood.

3              THE COURT:  So that means that no matter what

4    evidence or arguments you might present to me at sentencing

5    about grounds for leniency that there might be in your case,

6    I'd have no choice under the law to impose a sentence of

7    anything less than 15 years in prison, and I could impose a

8    sentence up to 30 years in prison.  Another advantage of

9    having lawyers represent you is that at sentencing there is a

10   lot of room between 15 and 30 years.  So I have no idea if you

11   will or will not be convicted of this crime; but if you were

12   convicted, the Federal Defenders, just like CJA lawyers, have

13   a lot of experience in preparing sentencing submissions and

14   they can do things that are very difficult you to do from

15   jail; namely, get letters or documents in support of leniency.

16   For example, I sometimes get 40 or 50 page packets from the

17   Federal Defenders with lots and lots of submissions that are

18   very helpful to me in deciding where I have discretion what

19   range to sentence someone to you.  If you are in jail and

20   unable to communicate or communicate reliably with people on

21   the outside, it would be difficult for you to do that

22   yourself.

23             I just want you to give that some thought as well,

24   looking ahead to what could happen if you represent yourself.

25   Do you understand that?

FARETTA HEARING                                32

1          THE DEFENDANT:  Understood.

2          THE COURT:  There is no parole in the federal

3    system.  You would not be paroled for good behavior for any

4    other reason before you served whatever prison sentence you

5    receive if you are convicted.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  There is also a possibility that the

8    mandatory minimum sentence in your case could be even higher.

9    If it's found that you have certain qualifying prior

10   convictions, the Court must sentence you to a term of

11   imprisonment determining on the nature of those convictions of

12   not less than 25 years and up to 50 years.  Or if you have two

13   prior convictions that qualify, the Court must sentence you to

14   a term of imprisonment of no less than 35 years and up to a

15   term of life.

16          In the original detention memo that the Government

17   filed in your case, it indicated that it was unaware of any

18   prior convictions you had that would make you eligible for

19   those longer mandatory minimum intercepts.  But they don't

20   have to standby that position at sentencing.  So if the

21   Government learns of a prior conviction that they didn't know

22   about before or if there is a prior that you have that they

23   didn't think qualified as a prior conviction for purposes of

24   this higher mandatory minimum but they want to make the

25   argument that I should impose a higher mandatory minimum, they

FARETTA HEARING 33

1    would be free to make that argument.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Additionally, if you're found guilty on

4    Count One I could impose a term of supervised release of up to

5    five years.  Supervised release refers to a period of time in

6    which a person is subject to supervision by the Probation

7    Department after completing a term of imprisonment.  You'll

8    have to follow the rules of supervised release.  And if you

9    violate those rules you could be sent back to prison without a

10   jury trial to serve an additional term of up to three years

11   without any credit for the time you previously served in

12   prison as a result of your sentence.  And without any credit

13   for the time you spent on post-release supervision.

14             Do you understand that?

15             THE DEFENDANT:  Understood.

16             THE COURT:  Okay.  In addition, if you're found

17   guilty of Count One the Court could impose a maximum possible

18   fine of $250,000.  I also would need to order you to pay a

19   mandatory special assessment of $100.  Do you understand that?

20             THE DEFENDANT:  Understood.

21             THE COURT:  Okay.  And do you understand that if

22   you're found guilty you would be required to register as a sex

23   offender?

24             THE DEFENDANT:  Understood.

25             THE COURT:  Do you understand that if you're found

1    guilty there could be other penalties imposed on you in

2    addition to the ones that I've just described, and that at

3    this time no one can foresee every possible consequence of

4    your conviction if you are convicted?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you have any questions at all about

7    what I've just explained to you?

8              THE DEFENDANT:  No.

9              THE COURT:  Let me now ask you a little about your

10   experience with and knowledge of the law.  Have you ever

11   studied law?

12             THE DEFENDANT:  No.

13             THE COURT:  Have you ever represented yourself in a

14   criminal case?

15             THE DEFENDANT:  Only civil law, not criminal.

16             THE COURT:  Tell me about the civil proceedings in

17   which you represented yourself.

18             THE DEFENDANT:  Contract -- had someone do some work

19   and they didn't complete, breach of contract.

20             THE COURT:  Did you as plaintiff file a case against

21   them?  Were you trying to sue somebody?  Or were they suing

22   you for the breach of contract?

23             THE DEFENDANT:  Other way around.

24             THE COURT:  Tell me what you mean by the other way

25   around?  Who brought the lawsuit in that case?

1          THE DEFENDANT:  I can't recall the company name.

2          THE COURT:  I guess what I mean is, in a civil case

3     one party or person, so a corporation or individual, starts

4     the civil case by filing the lawsuit and the other person is

5     called the defendant who is person who is being sued.  In that

6     case, were you person who filed the lawsuit or the one who got

7     sued?

8          THE DEFENDANT:  Got sued.

9          THE COURT:  And you represented yourself in that

10    case?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Where was that case brought, what court?

13         THE DEFENDANT:  Brooklyn.

14         THE COURT:  Do you remember if it was in state or

15    federal court?

16         THE DEFENDANT:  State.

17         THE COURT:  And what happened in that case?

18         THE DEFENDANT:  Motion was granted in favor of

19    defendant.

20         THE COURT:  Did you end up having to pay any money

21    at all?

22         THE DEFENDANT:  No.

23         THE COURT:  Did have you a trial?

24         THE DEFENDANT:  Yes.

25         THE COURT:  You had a trial.  Tell me about the

FARETTA HEARING                                    36

1    trial, was it before a judge or jury?

2              THE DEFENDANT:  Judge.

3              THE COURT:  And what did it involve?  What did you

4    do in that case when you were representing yourself.

5              THE DEFENDANT:  Show supporting evidence of what was

6    finished and what was not finished.

7              THE COURT:  Did you have to call witnesses or did

8    you make arguments based on the papers?  How did it go?

9              THE DEFENDANT:  Just on paper.

10             MS. HARRIS-CALVIN:  Your Honor, he said witness and

11   paper.

12             THE COURT:  In that case there were witnesses on the

13   witness stand who got sworn just like you did today?

14             THE DEFENDANT:  Correct.

15             THE COURT:  Did you ask them questions?

16             THE DEFENDANT:  They made statements.

17             THE COURT:  Do you remember if you asked them

18   questions directly or if they got up and talked?

19             THE DEFENDANT:  Talked directly to the judge.

20             THE COURT:  Have you ever filed any kind of pretrial

21   motions or made any legal arguments on your own other than the

22   contract case we just talked about?

23             THE DEFENDANT:  No.

24             THE COURT:  Do you understand that in a criminal

25   case pretrial motions can be one of the most important parts

1   of the case because those rulings can affect what evidence the

2   jury does or does not get to hear?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Have you ever filed a pretrial motion in

5   a civil case even if you had a lawyer representing you?

6                THE DEFENDANT:  No.

7                THE COURT:  Have you considered the possibility you

8   that I might have a lawyer represent you at trial but reserve

9   the right to file your own pretrial motions?

10               THE DEFENDANT:  Repeat that again?

11               THE COURT:  Sure.  One way that some people who want

12  to represent themselves proceed is they feel frustrated by the

13  fact that their lawyer is not filings the motions they want

14  filed.  So sometimes the judge will allow a pro se person in

15  what is a break from the usual procedure to file their own

16  motions but still have a lawyer represent them for purposes of

17  trial.  Have you considered whether that is something that you

18  might resolve your concerns?

19               THE DEFENDANT:  No, I'd rather not.

20               THE COURT:  Do you understand that if you don't have

21  a lawyer you'll be responsible for doing all of the

22  preparation of your own pre-trial motions and filing all those

23  motions on your own?

24               THE DEFENDANT:  I understand.

25               THE COURT:  Do you understand that if you represent

FARETTA HEARING                              38

1    yourself you're own your own at trial.  I can't tell you or

2    even give you advice on how you should try your case.  Do you

3    understand that?

4                 THE DEFENDANT:  I understand.

5                 THE COURT:  If you've got questions about the rules

6    of evidence or strategy or about the kinds of arguments you

7    should make to the jury, I can't give you any advice or

8    guidance at all about those.

9                 THE DEFENDANT:  Yes.

10                THE COURT:  Do you understand that once you make

11   this decision it's not a situation where you can change your

12   mind.  So for example, after the trial begins you can't go

13   back and forth and say I want a lawyer to handle this witness

14   but I'm going to represent myself for purposes of the making

15   the closing argument.  Do you understand that?

16                THE DEFENDANT:  I understand.

17                THE COURT:  So even if I were to appointment what is

18   called standby counsel, which is a lawyer who might sit at

19   counsel table with you at trial to answer certain questions,

20   they can only be legal adviser.  So they would be very

21   unlikely to be able to take over for you at trial if you

22   decided you needed more help, because they would not have put

23   in the time needed to prepare for trial and effectively

24   represent you.  Do you understand that?

25                THE DEFENDANT:  I understand.

FARETTA HEARING                    39

1          THE COURT:  Are you familiar with the Federal Rules

2    of Evidence?

3          THE DEFENDANT:  Yes.

4          THE COURT:  What is your background or familiarity

5    with the Rules of Evidence?

6          THE DEFENDANT:  Like the rules or?

7          THE COURT:  It sounds like you know that they exist.

8    Have you read them?  Have you studied the rules?

9          THE DEFENDANT:  I've read and gone through them,

10   yes.

11         THE COURT:  Have you read or studied the Federal

12   Rules of Criminal procedure?

13         THE DEFENDANT:  Yes, I have.

14         THE COURT:  Do you understand those rules govern or

15   control what evidence may or may not be introduced in trial.

16   In representing yourself you have to abide by and follow those

17   very, very technical rules and I can't relax those rules for

18   your benefit or say just because you're not a lawyer I'm going

19   to allow you to do something that a lawyer wouldn't otherwise

20   get to do.

21         THE DEFENDANT:  Yes.

22         THE COURT:  Are you familiar with what is called

23   pretrial discovery in a criminal case?

24         THE DEFENDANT:  Yes, I am.

25         THE COURT:  So since you're being held in jail at

FARETTA HEARING                40

1    MDC, there are certain ways that it will be very hard or even

2    impossible for you to review discovery before the trial

3    actually starts.  For example, there might be child

4    exploitation material or personal information about the

5    complaining witnesses in this case that are so sensitive that

6    I cannot or will not order the Government share with you

7    before trial begins.  On the other hand, if you have a lawyer

8    the lawyer can be permitted under what is called a protective

9    order to review that material on what is called an attorneys

10   eyes only basis.  So they can go to a special facility to look

11   at it.  That gives you a real advantage if a lawyer because

12   they will be able to see the evidence before trial and they

13   can go out investigate what they see and better prepare to

14   represent you.  That is a real disadvantage to proceeding pro

15   se, especially in a case like this one, which means that much

16   of what you see at trial if you represent yourself may come as

17   a real surprise to you.  If you say to me, judge, I need more

18   time to investigate this I want to stop the trial.  I will

19   unlikely be able to do that, and all but uncertain that I will

20   not do that.  Do you understand that?

21             THE DEFENDANT:  Understood.

22             THE COURT:  Do you have any concerns at all that you

23   would not be review all of the discovery necessarily before

24   proceeding to trial if you represent yourself?  Do you want to

25   talk to Ms. Harris for a moment?

FARETTA HEARING                41

1          Take a few minutes and explain what I'm talking

2    about.

3          (Discussion was had off the record.)

4          MS. HARRIS-CALVIN:  Thank you, your Honor.

5          If I can clarify for the Court what I was clarifying

6    for Mr. John.  So, the Court hasn't seen the all the discovery

7    either so the Court has to let him know that there might be

8    some contraband material which is child exploitation material

9    that I would be able to see, that doesn't mean he won't be

10   able to see anything that might right now be potentially

11   subject to protective order.  This is just something the Court

12   has to let him know.  Because when we get to the place where

13   he wants to look at some discovery, there might be some of

14   that discovery that he can't go down into the basement here

15   with the FBI agent and standby counsel, and potentially the

16   prosecutor, to sit and look through which some of that

17   material he might be able to do that to view, but there might

18   be still be some that is off limits to him.  I wanted to let

19   the Court know that is what I was clarifying for him.

20          THE COURT:  So Mr. John, do you have any questions

21   at all about that how that works?

22          THE DEFENDANT:  No.

23          THE COURT:  Do you understand that could put you at

24   a real practical disadvantage in terms of knowing what the

25   evidence will be that the Government seeks to introduce at

1    trial, that you wouldn't have if you had a lawyer represent

2    you.

3             THE DEFENDANT:  I understand all the disadvantages.

4             THE COURT:  Despite knowing that disadvantage why it

5    is that I still want to represent yourself?  Why is that a

6    risk or a consequence that you're willing to take?

7             THE DEFENDANT:  For me, it's not a risk.

8             THE COURT:  Tell me in your own words why.

9             THE DEFENDANT:  It's a risk to some, but not a risk

10   to me.  I can't go further into detail.

11            THE COURT:  Do you understand that if you don't

12   review the same amount of discovery that your lawyers might

13   get to review because of their different position in the case

14   and the fact that they are not in custody -- so for example,

15   the circumstance Ms. Harris was talking about, she would be

16   able to go to a secure room here to review things that

17   couldn't be brought into the jail for you to review, that

18   means you would not be able to make certain pretrial motions

19   that she might otherwise make.  So for example, she might go

20   down, or Mr. Branden might go down, and take a look at some of

21   the material and say in a motion something along the lines,

22   Judge, this has nothing to do with any evidence in the case,

23   it doesn't have to do with the charges, or it's so prejudicial

24   that I think the jury is going to focus in this photograph or

25   message that is going to harm my client's ability to get a

1    fair trial.  But if you don't get a chance to see that

2    evidence before trial, you wouldn't be able to make the same

3    motion that they would.  You need to make it at trial, but

4    you'd be doing that while you were in the middle of a trial,

5    and that comes with real disadvantages.  Do you understand

6    that?

7                THE DEFENDANT:  Yes, I know I'm at a disadvantage.

8                THE COURT:  Mr. John, I need to ask you, you've

9    acknowledged that there is a lot of ways that not being

10   represented by a lawyer still puts you at a real disadvantage.

11   I just want to understand, because I have to ultimately decide

12   if this is a decision you can make, in your own words why,

13   knowing how much harder it can be for you to defend yourself

14   against these very serious charges, you still wish to proceed

15   without a lawyer despite these disadvantages?

16               THE DEFENDANT:  That's correct.

17               THE COURT:  I guess what I'm saying is I need you to

18   tell me more in your own words now that you acknowledged all

19   these disadvantages why it is that still you wish to proceed

20   without a lawyer?  That is, how do you think it will be in

21   your best interest, even knowing you wouldn't have access to

22   all the discovery, you can't do the same kinds of

23   investigation or file the same kinds of motion in this

24   particular case.

25               THE DEFENDANT:  I know it's not in my -- the

1   majority of the time it would not be in my best interest, but

2   I'm still going to stick with it.

3          THE COURT:  Okay.  Mr. John, let me say that you're

4   not under any pressure to make a decision about this right

5   now.  These are important issues that you should decide

6   carefully.  I know you were not interested in speaking with

7   Mr. Branden, but here is what I'm going to do.  I have to look

8   at some things on the law any way and I need to hear from the

9   Government.  After I hear from the Government, we're going to

10  take a break.  I'm going to have the Marshals bring you back

11  to the holding area and have Mr. Branden speak to you.  If you

12  don't want to talk to him, you don't have to.  But I want to

13  give you a chance to speak privately.  Since he's here for the

14  purposes of giving you legal advice, everything that you say

15  to him and he says to you will be confidential; he can't

16  disclose it to me.  You're under no obligation to disclose it

17  to me.  But I want to give you that opportunity and give that

18  chance.  Okay.

19         Ms. Harris, do you have any concerns about me doing

20  so?

21         MS. HARRIS-CALVIN:  No, not at all.

22         MR.. BRANDEN:  May I?  Because today is my duty day

23  and there is several cases down there, I looked at my phone --

24         THE COURT:  You have some folks in arraignment.

25  Yes, this is taking a while.  Tell me what makes sense.  Do

1   you want to go?  You go ahead and check in there, and then

2   come back.  We'll continue without you here, and you'll come

3   back when you're done.

4              MR.. BRANDEN:  I'll speak with Mr. John then.

5              THE COURT:  No problem.

6              Ms. Theodora, let me hear from you.

7              MS. THEODORA:  Sure.  The Government doesn't take a

8   position with respect to Mr. John's motion.  We think the

9   Court's colloquy with him has been more than sufficient.

10             I would just ask out of an abundance of caution that

11  the Court ask him whether anyone has any made any threats or

12  forced him in any way or made promises to him to proceed pro

13  se.  That was really the only thing that we thought might be

14  good for the Court to ask; otherwise, we think the colloquy

15  has been sufficient.

16             THE COURT:  All right.  Mr. John, has anyone made

17  you any threats or promises in connection with this question

18  of whether you should or should not proceed with a lawyer's

19  assistance at trial?

20             THE DEFENDANT:  No.  The decision is mine and mine

21  alone.

22             THE COURT:  Has anyone promised that you would

23  receive anything if you fired your lawyer and proceeded pro

24  se?

25             THE DEFENDANT:  No.

FARETTA HEARING                              46

1        THE COURT:  Has anyone threatened you with

2   consequences if you relieve your counsel and proceed pro se?

3        THE DEFENDANT:  No.

4        THE COURT:  Okay.  Let's do this.  We'll adjourn for

5   now.  Mr. Branden isn't back yet.

6        Ms. Harris, would you like to stay in here with

7   Mr. John or take a break as well and come back and when

8   Mr. Branden is ready.

9        MS. HARRIS-CALVIN:  I think we're okay with sticking

10  around the courthouse.  But I would like to run out.

11       THE COURT:  Why don't you go do that.  Come back in

12  and you can speak with him for as long as you like at this

13  juncture.

14       I'll have Freddie keep me posted when Mr. Branden

15  comes back.  If he's not back in 20 minutes, we'll go back on

16  the record and proceed.  If he comes back sooner, the Marshals

17  can take him back to the holding area.

18       Mr. John, I hope you listen to Mr. Branden and hear

19  what he has to say.  He's a neutral person not familiar with

20  you or the case, has no dog in the fight.  Just like Ms.

21  Harris-Calvin, he has a legal obligation if you chose to have

22  him represent you, to represent you vigorously and within the

23  full extent of the law.  And he will be your lawyer if you

24  would like me to appoint him to represent you.  So I hope

25  you'll give that some thought.  But I understand your current

1  position is you still wish to pro se.

2          We'll adjourn and come back on the record shortly.

3          Do any of you have any conflicts on September 17 to

4  come back then?

5          MS. HARRIS-CALVIN:  I have a 2:30 conference that

6  day.

7          MS. THEODORA:  I just have a status conference at

8  three, otherwise I'm available.

9          (Brief recess.)

10          THE COURT:  Mr. John is back with us and we're back

11  on the record.

12          So Mr. John, here is what we're going to do.  I'm

13  not yet prepared to rule on this question of whether you're

14  able to represent yourself so I'm going to adjourn this

15  Faretta hearing and continue it at a later date and we'll

16  discuss when that date will be.  The reason I'm adjourning it

17  is that, as I discussed with you earlier, one of the factors I

18  have to consider at a Faretta hearing, and this is from the

19  Second Circuit's decision in Torres versus United States 140

20  F.3d 392 401 to 402, Second Circuit 1998, one of the factors

21  that I have to satisfy myself is that you fully understand the

22  ramifications of your decision and that you have the capacity

23  to make a voluntary and intelligent choice.  It may be that

24  you do, I'm not deciding that issue today.  But in light of

25  the fact that you had a fairly recent suicide attempt last

1   year, you're own recollection is incomplete, and your own

2   counsel was not sure of what your diagnosis was from there, as

3   well as from your three to four weeks in Sweden.  Under the

4   law, I have an obligation to review the medical records and

5   make sure I don't need a further inquiry.  That could include

6   a separate competency evaluation, but it might not.  It might

7   be that based on the records and our discussion today, I can

8   decide that you're able to proceed without a lawyer or decide

9   that you're not.  But I need to look at those records to be

10  sure.

11          So the other thing is that, that won't take as much

12  time.  I want you to have a chance to meet with Mr. Branden

13  and he's now tied up at arraignments with a number of other

14  people.  He's going to be able to visit with you have today

15  before they take you back to the jail.  But I would like you

16  to have a chance to speak with him.  And if at any point

17  anything that he says convinces you that there would be an

18  advantage or you would be comfortable proceeding with him as

19  your lawyer, you can let him know or let Ms. Harris or

20  Ms. Hernandez know and they can get a message to me and

21  arrange for substitution of counsel.

22          I know currently's now not how you want to proceed,

23  but I hope you give some thought as to what we discussed today

24  and whether that's something that could work for you.

25          In the meantime, let's do this.  Let me have the

1   Federal Defenders provide me, unless the Government has any

2   objection, on an ex parte and in camera basis Mr. John's

3   medical records, any mental health records that you've

4   gathered to date.  I believe what we discussed so far are the

5   records from Sweden, per colloquy today they should include

6   make sure you have them, both his records from the prison when

7   he served his time, any medical or mental health treatment he

8   received as well as the period of time Mr. John estimated,

9   three to four weeks, that he was held in some sort of

10  psychiatric facility pretrial.  And it sounds like there was

11  some sort of competency evaluation or proceeding.  It may be

12  there was a proceeding before a judge, I don't know how

13  difficult it would be to get a transcript of that, but I think

14  to the extent there was a competency proceeding, I should

15  review those records at well.  And if we need additional time

16  for those to be gathered or translated, can you let me know

17  and we'll move the proceeding back.

18          In addition, if you do have any of the records from

19  his hospitalization in 2024 from the suicide attempt, and any

20  records from the out-patient program that he either went to

21  one or two meetings of or didn't attend, if there are any

22  records there, I'd like to review those as well.

23          To the extent you have any records from his

24  childhood or teenage years from the initial suicide attempt or

25  treatment he received I'd like to review them.  If you don't

1   have them, I don't think you need to get them yet.  I'm not

2   asking you to give me work product, you don't need to give me

3   notes or summaries, the only thing I need, since you have them

4   translated into English, the ones from Sweden, give me those

5   translations that would be helpful.

6           MS. HARRIS-CALVIN:  Also during the break I did

7   check.  Pretrial Services had him evaluated in December.  I

8   have a couple of records from that.  One of which diagnosed

9   him with major depression, and another which was a

10  psychosexual that has an impressions, it doesn't seem like it

11  has a diagnosis.

12          THE COURT:  I would like those as well.

13          How long would you need.  I want an electronic of

14  the documents as well.  You can up load those securely.

15          MS. HARRIS-CALVIN:  The Elmhurst records easily by

16  tomorrow.  I just took a peek at them on break, it's about 500

17  pages of those.

18          The Swedish records I'm not quite sure how long.  I

19  can sort through them and see which of those are not just

20  attorney work product, it came from the attorney's records.

21  So the documents that are translated we can pull out whatever

22  is a record from the psychiatric evaluation.  It took us a

23  long time to get what we did get translated, it was pretty

24  costly.  We'll do our best over the next week.

25          THE COURT:  I don't think I need them piecemeal.

1  Let's say two weeks from now.  If you need more time, you'll

2  give me what you have in two weeks, give me whatever you have

3  in two weeks and if I need more time we can do that.  So

4  submit what ever you have September 2.  And just indicate in a

5  cover letter, again, those can be delivered ex parte, what, if

6  anything, else you still need to gather.  If there are records

7  for which it would be helpful to have a subpoena from the

8  Court, I know that can often be much more quickly done and

9  honored than a letter from counsel, just let me know and I'm

10  happy to enter one.

11          Okay so in light of that and given the fact that at

12  least the -- do you have any sense how long records from

13  Sweden are, ballpark?

14          MS. HERNANDEZ:  Maybe two pages.

15          MS. HARRIS-CALVIN:  That we do have translated.  I'm

16  not sure it's a big file.

17          THE COURT:  There might be more that are not

18  translated.

19          MS. HARRIS-CALVIN:  We got the attorney's client

20  file and translated what we saw.

21          THE COURT:  Understood.  Why don't you then also

22  indicate in the letter if it looks as though from your review,

23  and you can go back in your notes, if it looks like there are

24  competency proceedings that you don't have or if the records

25  reference other records that you didn't obtain so I know if

1    there are additional records that I need to at least consider

2    reviewing.  We'll have an update in two weeks.

3              I'm going to go ahead and set a control date for a

4    status conference for the 17th of September.

5              Mr. John, I'm not sure given that we're talking

6    about several hundred pages at a minimum that I'll have those

7    reviewed by then and be ready with a decision, but I'll do my

8    best.  Let's come in on the 17th and talk about where things

9    stand.  How about at 1:30 p.m?

10             MS. HARRIS-CALVIN:  Is it possible in the morning?

11             THE COURT:  I'm happy to do the morning, the only

12   issue is Marshals for the jail.  Can you accommodate us late

13   morning, maybe 11?

14             THE COURTROOM DEPUTY:  11:30 a.m.

15             THE COURT:  Okay.  We'll do 11:30 a.m.

16             Mr. John, do you still wish to assert your right to

17   speedy trial under the Speedy Trial Act?

18             THE DEFENDANT:  It can wait until the 17th.

19             THE COURT:  I'll go ahead with Mr. John's consent in

20   light of the pending Faretta motion until Wednesday,

21   September 17.  And Mr. John, that will give me a chance to

22   look at as many of the records as I can and figure out where

23   we are.  And give you a chance to talk to Mr. Branden and

24   think about what we talked about today.  And on the 17th you

25   can tell me your views and where I stand.

1           In the interest of justice and without objection

2    from Mr. John or counsel, I'll exclude time until Wednesday

3    the 17th.

4           Let me hear on the status of discovery.  If the

5    Government is prepared to tell me anything at all about the

6    potential timing or the possibility of a Superseding

7    Indictment, without compromising the secrecy of the Grand

8    Jury, I'm all ears.

9           MS. THEODORA:  Discovery is the same.  We haven't

10   produced anything since last time we spoke.  There are some

11   witness statements that we have not yet produced that we would

12   normally produce closer to trial that we will produce when a

13   trial date is set and it's closer to trial.

14          On the potential Superseding Indictment, I'm not

15   sure if I can give an update there.  But we're considering --

16   we have, as your Honor mentioned, we have all a large amount

17   of evidence from a large number of electronic devices.  We're

18   still reviewing and evaluating that.

19          THE COURT:  That is of course within your right.

20   Let me say, given that Mr. John has indicated at least at the

21   present time his intent not to consent to an exclusion of time

22   and he wishes to have a trial within 70 days of it is that we

23   decide how he's going to proceed, I haven't looked into how

24   that might play out if there is a superseder.  But the sooner

25   we know where we are, the better for determining when we need

FARETTA HEARING                                    54

1   to hold a trial, if that's what he wants to do.

2           Mr. John, if you do represent yourself, I know

3   you're eager to have the trial, but you should think about

4   what time you might need to prepare your own case, do some

5   legal research in the library, think about pretrial motions

6   and the like.  If you don't have it within 70 days, that would

7   give you more time to do what you need to do if you represent

8   yourself.  And similarly, if you proceed with a lawyer that

9   would give the lawyer more time to do it.  I'm not going to

10  ask to give me your position now, but that's something you

11  should think about.  Okay?

12          THE DEFENDANT:  Okay.

13          THE COURT:  Thank you all.  Anything further before

14  we adjourn?

15          MS. THEODORA:  No, your Honor.

16          MS. HARRIS-CALVIN:  No, your Honor.

17          THE COURT:  Thank you.  We're adjourned.

18          (Whereupon, the matter was concluded.)

19                 *     *     *     *     *

20  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

21

22  */s/ Rivka Teich*
    Rivka Teich, CSR RPR RMR FCRR
23  Official Court Reporter
    Eastern District of New York

24

25